JOHNSON v. THE STATE.

1. It was not error for the court, in charging the jury, to instruct them to look at the case in two aspects: first, leaving out of view the evidence given by accomplices, to inquire whether there was enough proved otherwise to warrant them in finding a verdict of guilty; and secondly, to consider the case upon all the evidence, the accomplice-evidence included. The charge was not prejudicial to the accused, because the accomplice-evidence bore against him, none of it in his favor; and the court charged that no conviction could be had upon it unless it was corroborated.

2. Generally the time when the alleged offence was committed, so that it be not barred by the statute of limitations, is immaterial; but when the evidence renders it material relatively to other facts in evidence, the jury may and should recognize its materiality. A charge to this effect, though apparently superfluous, was not erroneous.

3. It is not for the jury to pass upon the conduct either of the judge or of the solicitor-general in conducting a criminal case.

v 92-37

4. Where there was no evidence connecting the accused with the alleged burglary except the testimony of two witnesses who admitted that they were accomplices in the burglary, and the State sought to corroborate the accomplices by showing that a garment found on the person of the accused recently after the commission of the offence was a part of the goods taken from the broken building by the burglars, evidence which fails to identify the garment as such, with reasonable certainty, is insufficient corroboration, the owner of the goods having testified as a witness in behalf of the State, and the record showing no reason or explanation why he failed to testify to the identity or to a description by which the identity might appear.   In consequence of this failure to corroborate the accomplices, the evidence was insufficient to warrant the verdict, and it was error not to grant a new trial.

March 14, 1893.                              *Judgment reversed.*

Indictment for burglary.  Before Judge Richard H. Clark.  Fulton superior court.  September term, 1892.

Delk, Moore and Johnson were indicted for breaking and entering the tailor-shop of B. Fresh and stealing eight pairs of pants and five coats.   Johnson was found guilty, and his motion for a new trial was overruled. The special grounds of the motion were, that the court erred in the following parts of the charge :

1. "I will charge you first upon this case as though Delk and Moore had not testified at all.   I will first present the case to you with these men entirely out of it and in no way in question in the case ; and then taking the testimony that is before you as to the possession of a pair of pants or couple of pair of pants by this defendant, and all the testimony going to illustrate the possession of the pants, the management in regard to it and the conduct about it, do you believe you would be justified in the law in finding this defendant guilty of burglary in this case?   Do you believe then, applying the rule of law above as to the evidence, as I have given it to you, that you would be warranted in finding this defendant guilty ?   If so, and you so believe, you should do so."

2. " Perhaps I ought to charge you that the time that this burglary was committed, if you believe that a burglary was committed, is immaterial. The law allows the State to go back four years, in cases of this sort, prior to the date when the bill of indictment was found. But if upon the testimony the time is made by the evidence material, it may be made from the run of the evidence material, and therefore, if that is the case you are to consider the time."

3. " The solicitor-general, under the law, has a right to conduct a case for the State as he sees fit, and then when it reaches the judge he has a right to do the same, and it is not for the jury to pass upon that."

4. The motion contained also the grounds, that the verdict was contrary to law and evidence. It appeared from the testimony of Fresh, that his tailor-shop was broken on Friday night just before or just after the first day of August, 1892, which was Monday; and that second-hand clothes of the value of about $125, which had been left with him to be cleaned and repaired, were stolen therefrom. He further testified : When I found the goods missing, I reported the same to Wright, Bedford and Cason, at police headquarters; and I got one coat and two pairs of pants back. I identified the two pairs of pants and coat at the station-house about six weeks after the breaking. I went with the officers and searched old man Johnson's house (the father of defendant), and started to identify a pair of pants we found there, but did not, as they were not mine. Mr. Johnson told me to take them if I wanted them, but they were not mine.—D. S. Looney testified : I got a pair of Fresh's pants off of defendant; we got two or three pairs of pants and a coat or two, but only got one pair of pants (a brown pair) from defendant. He said he got the pants from a boy named Myers, and that he had had them about six weeks. I went to Anniston, Alabama, after Delk and Moore.

I found Delk in the station-house there. It was after he was brought back that he told me Johnson was one of them, and what kind of clothes he had on. In getting up these goods we arrested a man by the name of Joe Montgomery who also went by the name of Myers. He sawed out of the station-house and got away about the 30th of last August. The other goods I found that belonged to Fresh were in Oxanna and Anniston, a pair of pants and a coat or two.—C. M. Cason testified: The pants that Johnson had on when arrested were the pants that matched the coat that Fresh has on now. It was a week or two ago (in September) when Delk and Moore told us about Johnson. When we arrested Johnson he pulled off the old pants he had on, and started to put on the pants he wears out of the shop, and I told him we wanted the ones he had pulled off. I think some of the officers have the pants in their possession yet. Old man Johnson was perfectly willing for us to search his house. —Will Harbuck testified: I work at Frank E. Block's. Defendant worked there. I burned up an old pair of pants that belonged to him. Old man Johnson told me to do it; he had come after his son's clothes. I burned a pair of pants and an old undershirt. No one picked out the pants to burn; they were under the table with his clothes. I disremember the pants; they were black with blue or green stripes; they had two patches on the seat, sewed on the outside. Old man Johnson took a pair of pants away with him, and a top shirt. Cross-examined: The next morning after defendant was arrested, I was at Mr. Johnson's house and told him about his son's clothes being up at the factory, and went with him there after them. Did not tell him about the pants. When he came down after the clothes, he found those old patched pants and said they were old and shabby, and said he didn't believe he would take them home, and to burn them up. They were old shabby pants with

two patches on the seat. They were pants he had to work in. Mr. Johnson said I could burn them if I wanted to. He had left before I burned them. He did not know the things were there until I told him about them.—Delk and Moore testified that they and Johnson committed the burglary. Delk testified that Johnson got two pairs of pants, one of a kind of yellow cheviot, the other of green checks. There was testimony for defendant, that he had a dark brown pair of dirty pants on July 16, 1892; and that the burglary was committed on the night of August 19th. He stated that he got a pair of pants from a fellow who said his name was Charlie Myers, but whose name was Joe Montgomery, gave him seventy-five cents and was to pay him fifteen cents more, but never saw him any more; and that he knew nothing of the burglary, etc.

FRANK L. HARALSON, for plaintiff in error.
C. D. HILL, solicitor-general, contra